[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR ORDER OF COMPLIANCE AND MOTION FOR ORDER TO QUASH DEPOSITION
By order dated April 11, 2001, the court granted, in part, defendants' CT Page 7330 New Britain Board of Education, James Rhinesmith, Ashley Roberts and Joann Beckley's (defendants) motion for order of compliance (#160) and denied non-party witness Lynne Kowalczyk's motion for order to quash deposition (#169). The court ordered that Kowalczyk's deposition be resumed. On May 1, 2001, the plaintiff, Beth Kavy, filed a motion seeking articulation by the court of the reasons for its decision on the aforementioned motions. The court issues this decision in order to provide an articulation.
I. Background
The operative complaint in this matter is the third revised complaint, dated October 23, 2000, containing twenty-eight counts. Kowalczyk is prominently mentioned in the complaint's allegations. In the second count, which is entitled "Sexual Orientation Discrimination-Connecticut General Statute Section 46a-81c," Kavy alleges that, in 1997, she was employed as a special education teacher in a New Britain, Connecticut public school. In paragraph 13, she alleges that she "is a homosexual and, therefore, is a member of a protected class." In paragraph 14, Kavy alleges that she had been in a long-term physical relationship with another female teacher . . . Lynne Kowalczyk. It is further alleged that, after Kavy received offensive materials through the interschool mail and the school computer system, she and Kowalczyk ended that relationship and that Kowalczyk began a physical relationship with defendant Maria Garcia, a nurse also employed by the school system. Kavy also alleges that she and Kowalczyk continued to be close friends. (Complaint, second count, ¶ 14.) Kavy alleges also that she notified various employees of the defendant Board of her receipt of the "offensive and threatening material," which was allegedly sent by Garcia, but that they failed to investigate and failed to offer her a procedure or forum to address these complaints. In addition, she claims that she received a similar lack of response to her complaint that false telephone calls had been made about her to the State of Connecticut Department of Children and Families. (Complaint, second count, ¶¶ 9, 10, 12.)
Further, she claims that Rhinesmith, the Superintendent of Schools for the Consolidated School District of New Britain, "knew that Lynne Kowalczyk was a homosexual, and knew of her relationship with Defendant Garcia." (Complaint, second count, ¶ 16.) Kavy's allegations then state that, on October 29, 1997, Garcia assaulted her at Kowalczyk's home, breaking her nose. (Complaint, second count, ¶ 17.) At school the next day, Kavy reported the assault to her school's principal, defendant Roberts, who informed Rhinesmith of the assault. (Complaint, second count, ¶¶ 19-20.) Rhinesmith subsequently informed Roberts of his decision to transfer both Kavy and Kowalczyk from their positions. (Complaint, second count, ¶ 22.) Kavy alleges that this decision to CT Page 7331 transfer her, to a lesser position, was unacceptable, and constituted a constructive discharge. (Complaint, second count, ¶¶ 24-25.) She also claims that Rhinesmith's decision to transfer her was "based on his knowledge of the sexual orientation of the parties." (Complaint, second count, ¶ 27.)
Kowalczyk's involvement in the allegations is further demonstrated by the references to her in the third count, entitled "Aiding and Abetting Discriminatory Employment Practices-Connecticut General Statutes §46a-60 (5)." Kavy's long-term relationship with her is mentioned (¶ 32), as is the assault at Kowalczyk's home (¶ 34), the decision to transfer Kavy and Kowalczyk (¶ 39), and the claim that the decision was based "only upon [Rhinesmith's] knowledge of the sexual orientation of the parties." (¶ 45) Kavy claims that she was illegally transferred from her position because of her sexual orientation. (Complaint, third count, ¶ 46.) Kavy seeks compensatory damages, punitive damages, and attorney's fees.
Kowalczyk was deposed by counsel on four dates in October and November, 2000. Kavy's counsel appeared at the deposition sessions in her capacity as Kavy's attorney. During the last session, on November 30, 2000, Kavy's counsel also acted as Kowalczyk's attorney and directed her not to answer certain questions posed to her by the defendants' counsel. Her explanation is the following: "because of the potential prejudice to the Witness of being unrepresented at the time that these questions about her CHRO action were asked, it was necessary for undersigned counsel to then appear as the Witness' attorney." (plaintiff's objection to defendants' motion — for order of compliance, p. 3; hereafter "plaintiff's objection")
With their motion, the defendants submitted portions of the transcript of Kowalczyk's deposition. On the first date, October 4, 2000, counsel for the parties stipulated that objections to questions posed, other than as to form, were reserved to the time of trial. On November 30, 2000, while Kay's counsel questioned the witness, and before she asserted that she was also acting as the attorney for the witness, the following exchange occurred:
 Q Now, you also testified that you had other reasons besides sexual orientations for your transfer, and you testified that there were no other reasons; do you recall saying that?
 A Do I recall saying that there were no other reasons for me to be transferred other than my sexual orientation; is that it? CT Page 7332
Q Yes.
A Yes; I recall that.
 Q But isn't it true you claim in your CHRO petition that you have a disability which is also a cause for your transfer; do you recall that?
A Yes. (Deposition transcript, pp. 497-498).
Subsequently, the defendants' attorney questioned the witness on redirect examination and asked questions concerning the claimed reasons for the transfer. Kowalczyk stated that one of the reasons for her October, 1997 transfer, at the same time Kay was transferred, was because of Kowalczyk's disability. She noted that the school system had made accommodations for her disability and that the transfer was "kind of a payback for those (Deposition transcript, p. 512) She testified that, previously, a Mr. Lesinski had reworked her assignment. (Deposition transcript, p. 514) She also stated that she and Lesinski spoke about the October, 1997 transfer in June, 2000. (Deposition transcript, p. 516) According to Kowalczyk, he stated to her that he had taken a lot of heat" for trying to make accommodations for her. When asked whether he said anything else, Kay's counsel objected, asserting her role as Kowalczyk's attorney in the CHRO proceedings. (Deposition transcript, pp. 517-518) The following exchange occurred:
 Q (by defendants' counsel) So your testimony here today I think has been that you think that your transfer on October 30th was a payback for the District having accommodated you on prior occasions; correct?
A Yes.
 Q Do you know whether Dr. Rhinesmith knew on October 30th about any of the accommodations, as you've characterized them, that occurred to you prior to that day?
[Kavy's/Kowalczyk's counsel] I'm going to instruct her not to answer, because it has to do with the CHRO complaint and not the Beth Kay versus Board of Ed case. (Deposition transcript, p. 519)
The deposition transcript further reflects that Kowalczyk stated that, based on her attorney's advice, she would not answer further questions CT Page 7333 about her own transfer, which was coincident with Kay's transfer. (Deposition transcript, pp. 519-520)
II. Discussion
In Connecticut, the scope of pre-trial discovery is broad. Rule of Practice § 13-2 provides for discovery to be permitted which is "material to the subject matter" if the disclosure would be of assistance in the prosecution or defense of the action. Further, But shall not be ground for objection that the information sought will be inadmissible at trial if. the information sought appears reasonably calculated to lead to the discovery of admissible evidence? Practice Book § 13-2. Information material to the subject matter of a lawsuit certainly includes a broader spectrum of data than that which is material to the precise issues raised in the pleadings? Lougee v. Grinnell,216 Conn. 483, 489, 582 A.2d 456 (1990)
The rules under which discovery may obtained by deposition are clear. As our Supreme Court reiterated in Cahn v. Cahn, 225 Conn. 666, 672,626 A.2d 296 (1993), "[a]ll questions, including those objected to, are to be answered . . . unless the objecting party procures from the court a protective order precluding or limiting the scope or disclosure of discovery." (Internal quotation marks and citation omitted.) Practice Book § 13-30(b) provides that "[e]vidence objected to shall be taken subject to the objections?"
As noted above, here the parties stipulated that all objections, except as to the form of the question, were reserved until the trial. Counsel "cannot during the middle of the deposition break the terms of the agreement [s]he made and challenge lines of inquiry in a manner not contemplated by the rules." Goenne v. Aetna Life Casualty, Superior Court, judicial district of Hartford-New Britain at Hartford, No. CV92-051106 (February 28, 1994, Corradino, J.) The method chosen by the plaintiff to interrupt the deposition, if countenanced, would entirely disrupt deposition procedures. . . . If improper, bad faith, or oppressive questions are asked during a deposition, the procedure is for counsel to immediately contact a Superior Court Judge for a ruling, Practice Book 247(c) [now § 13-30 (c)J not direct a witness to refuse to answer a question. Goenne v. Aetna Life Casualty, supra. The procedure is the same where the questions asked are merely irrelevant. See id. Here, the record does not reflect that any effort was made by plaintiff's (and Kowalczyk's) counsel to contact the court about this dispute at the time of the deposition.
In the face of these clear rules and applicable precedent, plaintiff asserts that the cases cited by the defendants, which included Lougee v.CT Page 7334Grinnell, supra, and Goenne v. Aetna Life Casualty, supra, are not on point. (Plaintiff's objection, p. 6) Plaintiff cites no cases which hold to the contrary; instead, she claims that objections at trial as to admissibility would not have resolved the issue, since the questions asked amounted to an impermissible attempt to depose Kowalczyk for the purposes of the CHRO proceeding.
The questions which her counsel directed Kowalczyk not to answer are material to Kay's action. As reflected above, plaintiff's complaint pleads that Kay's and Kowalczyk's transfers were related to one another, and were based on Rhinesmith's knowledge of their sexual orientation. Questions about Kowalczyk's transfer are appropriate in this matter whether or not they are also material to the separate proceeding concerning Kowalczyk's CHRO petition. Accordingly, the court reiterates that Kowalczyk's deposition is to be resumed. It is so ordered.